UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | ) |
| | ) Civil Action No. |
| Plaintiff, | ) |
| | ) 1:25-cv-00022 |
| v. | ) |
| | ) COMPLAINT |
| **SUGAR GROVE TOWNSHIP and the** | ) |
| **SUGAR GROVE AREA** | ) |
| **SEWAGE AUTHORITY**, | ) |
| | ) |
| Defendants. | ) |

The United States of America, by its undersigned attorneys, files this Complaint and alleges:

**INTRODUCTION**

1. The United States of America brings this civil action against Sugar Grove Township, Pennsylvania ("Township") and the Sugar Grove Area Sewage Authority ("SUGASA" or "Authority"), for violations of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc–2000cc-5. The Township and SUGASA violated RLUIPA when they enacted and enforced two ordinances against Old Order Amish residents: (1) an ordinance mandating that certain households connect to the Township's municipal sewer system, which requires homeowners to use an electric grinder pump ("Sewage Connection Ordinance"); and (2) an ordinance banning privies on property intended for permanent habitation ("Privy Ordinance").

2. The Township's and SUGASA's enforcement of these ordinances violates RLUIPA because they substantially burden the sincerely held religious beliefs and religious exercise of the

1

Township's Old Order Amish residents, whose religious beliefs restrict the use of electricity and require adherents to remain separate and apart from the modern world.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. § 2000cc-2(f).

4. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in the Western District of Pennsylvania.

## PARTIES

5. Plaintiff is the United States of America.

6. Defendant Sugar Grove Township is a governmental unit in Warren County in the Commonwealth of Pennsylvania and has a population of approximately 1,500 people.

7. The Township is governed by, and acts through, an elected three-member Board of Supervisors. The Board of Supervisors is a legislative body, responsible for enacting and applying zoning and land use regulations. Two of the three current Supervisors, Carl Black and George Sanders, have been Township Supervisors since before the Sewage Connection Ordinance was enacted in 2004.

8. The SUGASA is an agency of the Township. It constructed, owns, and manages the Township's municipal sewer line, and it enforces the Township's sewage-related ordinances. The SUGASA has filed liens and municipal and criminal complaints against Old Order Amish residents for purported noncompliance with the Township's sewage-related ordinances.

9. Two of the three Township Supervisors, Carl Black and George Sanders, also serve as operating members of the SUGASA.

10. The Township and the SUGASA employ a Sewage Enforcement Officer ("SEO"), Todd Fantaskey, who conducts sewage-related investigations on behalf of both entities.

11. The Township is a "government" under RLUIPA, 42 U.S.C. § 2000cc-5(4)(A)(i), and is responsible for the acts and omissions of its agents and agencies, including the Board of Supervisors, the SUGASA, and the SEO.

12. The SUGASA is a "government" under RLUIPA, 42 U.S.C. § 2000cc-5(4)(A)(ii), and is responsible for the acts and omissions of its agents, including its operating members and the SEO.

13. The Old Order Amish have existed in the Township for decades and are a "religious assembly or institution" within the meaning of 42 U.S.C. § 2000cc(a)(1).

## FACTUAL ALLEGATIONS

### The Old Order Amish of Sugar Grove Township

14. The Amish originally emigrated from Switzerland in the mid-1700s. Of its four main sects (Beach Amish, Amish Mennonites, New Order Amish, and Old Order Amish), the Old Order Amish constitute the largest group of rural Amish settlements in the United States.

15. A principal tenet of the Old Order Amish's religious beliefs is that adherents remain separate and apart from the modern world. To this end, the Old Order Amish observe a body of unwritten religious rules passed down through generations, called the *Ordnung*, which cover aspects of daily life and include prohibitions on virtually all uses of electricity, telephones, and automobiles. Many of these rules relate to maintaining a separation from modern technology and influence, as the Old Order Amish religion requires adherents to remain separate from, rather than integrate with, contemporary worldly society.

16. Approximately 25% of the Township's population are members of the Old Order Amish ("Sugar Grove Old Order Amish").

17. The Sugar Grove Old Order Amish use their private properties for religious purposes, including religious study and communal worship.  For example, worship services are held every other Sunday in a church member's private home rather than in a church building.

18. Because the Sugar Grove Old Order Amish are prohibited from using electricity and municipal utilities by their sincerely held religious beliefs, the Township's Old Order Amish residents use privies for the disposal of bodily waste.  Privies do not use running water or electricity and remain unconnected from municipal sewer systems.  Privies are the only feasible bodily waste disposal option that complies with the Old Order Amish's religious tenets requiring separation from modern technology.

19. The use of privies by the Old Order Amish in Sugar Grove poses no material threat to the health or safety of the Township or its groundwater.

**Sugar Grove Township**

20. Sugar Grove Township spans approximately 35 square miles in Warren County, Pennsylvania.  The Township encircles the much smaller Sugar Grove Borough ("Borough"), which has approximately 600 residents across 1 square mile.

21. Farming, both agricultural and livestock, is the Township's main industry and constitutes a significant percentage of the Township's land use.  While more land is devoted to agricultural farming than animal farming, the Township is nonetheless home to thousands of cattle, hundreds of sheep, and hundreds of goats.

22. The Township does not regulate the use of or spreading of manure for agricultural purposes.

23. The Township does not have any regulations on animal waste.

### The Township and SUGASA Construct a Municipal Sewer System Despite Old Order Amish Religious Objections

24. In approximately 2000, the Township and Borough agreed to build a municipal sewer system to service both localities.

25. The municipal sewer line was partially funded by Rural Utilities Services ("RUS"), a federal program under the United States Department of Agriculture ("USDA"), in the form of a loan and grant.

26. The Township and SUGASA expected to pay back the loan by charging property owners eligible to connect to the municipal sewer system a monthly fee and a one-time "tap-in" fee. Property owners who are not eligible to connect to the municipal sewer system do not contribute to it financially.

27. Northwest Engineering Service, Inc. ("Northwest Engineering") was hired to manage the municipal sewer project. Northwest Engineering was tasked with designing a municipal sewer system that extended as far as geographically and fiscally possible.

28. The municipal sewer system was built in three phases, with each phase reaching additional Township properties. The first phase of construction began in approximately 2002, and final phase of construction was completed in 2011-12.

29. Before the municipal sewer system was constructed, Sugar Grove Old Order Amish residents used privies without interference from the Township.

30. When the Township was considering constructing the municipal sewer system, Sugar Grove Old Order Amish residents voiced their religious objection to connecting to the municipal sewer system, which required the use of electricity, to the Township, SUGASA, and Northwest

Engineering. Despite the objection, the Township and SUGASA constructed the municipal sewer system without accommodating Sugar Grove Old Order Amish residents' religious beliefs.

### The Township Enacts the Sewage Connection Ordinance, Requiring Certain Residents to Connect to the Sewer System or Else Risk Imprisonment and Monetary Sanctions

31. In 2004, the Township enacted the Sewage Connection Ordinance, which requires every structure within 150 feet of the municipal sewer system to connect to it. Ordinance No. 04-06-15, Section 1. When construction was completed in 2011-12, approximately 14 Old Order Amish properties had structures within 150 feet of the municipal sewer system and required connection to it pursuant to Sewage Connection Ordinance.

32. To comply with the Sewage Connection Ordinance, covered property owners are required to apply to the SUGASA "for permission to connect a structure" to the municipal sewer system. The property owner must provide information regarding "the character and use of each structure" on a property and consent to the SUGASA inspecting and testing their "sewage system, effluent, connection facilities, and all other appurtenances and property associated therewith." Ordinance No. 04-06-15, Section 6, Part A.

33. To apply for permission to connect to the sewer system, as mandated, residents must also "pay the required applicable tap-in fee and/or initial service or connection charge," as set by the Township. Ordinance No. 04-06-15, Section 6, Parts B, C. The tap-in fee was originally $1,000, but increased to $1,350 when construction was completed in 2011-12.

34. To connect a structure to the sewer system, as mandated, residents must give the SUGASA at least 24 hours' notice "in order that the inspector can be present to inspect and approve the work and type of connection." Ordinance No. 04-06-15, Section 6, Part D. During the inspection, the property owner must allow "the inspector full and complete access to all

6

sanitary and drainage arrangements and facilities in each building and structure and in and about all parts of the property." Ordinance No. 04-06-15, Section 6, Part E.

35. Residents connected to the municipal sewer system were required to pay a "regularly monthly charge for sewage service." Ordinance No. 04-06-15, Section 3.  When construction ended in 2011-2012, the monthly sewer service charge was $48, and charges that were overdue by 20 days or more were subject to a monthly $12 administrative fee.

36. The original Sewage Connection Ordinance authorized the Township and SUGASA to impose civil penalties between $300 and $600 for noncompliance.  Ordinance No. 04-06-15, Section 10.  Once notified in writing by the SUGASA of noncompliance, each week of additional noncompliance was considered a separate offense "punishable by a like fine or imprisonment, or both, upon conviction."

37. At the time the Township enacted the original Sewage Connection Ordinance, it knew that complying with the ordinance would violate the religious beliefs of its Old Order Amish residents that were within 150 feet of the municipal sewer system.

### The SUGASA Reaches an Agreement with One Sugar Grove Old Order Amish Family After Phase One of Construction

38. The first phase of construction brought the municipal sewer system within 150 feet of one structure owned by a Sugar Grove Old Order Amish household, Joseph and Barbara Yoder ("Yoders").

39. The SUGASA informed the Yoders that they were required to connect to the municipal sewer system in August 2006.  The Yoders refused to connect because of their sincerely held religious beliefs and practices.

7

40. The SUGASA and the Yoders negotiated a resolution in March 2007 ("Yoder Agreement") that permitted the Yoders to keep using their privy and avoid connecting to the municipal sewer system so long as the Yoders paid a one-time $1,000 tap-in fee, past due charges of $864, and ongoing monthly payments to the SUGASA. The Yoders also agreed to pump their privy annually into the SUGASA's municipal treatment station at their own expense.

## The Municipal Sewer System Reaches More Sugar Grove Old Order Amish Structures, and the Township and SUGASA Take Action Against Old Order Amish Residents for Noncompliance

41. After the second and third phases of construction, the municipal sewer system came within 150 feet of at least 13 additional structures owned by Sugar Grove Old Order Amish households.

42. On November 6, 2009, the SUGASA offered each Old Order Amish property owner a "Sewage Services Agreement" that mirrored the Yoder Agreement. In making the offer, the SUGASA informed Old Order Amish property owners that to "avoid the Authority taking action to connect [their] property," the agreement must be signed and returned by November 23, 2009.

43. The Old Order Amish rejected the SUGASA's proposal on November 21, 2009, believing it to be "unconscionable and unacceptable." The Old Order Amish in Sugar Grove sincerely believed that paying a one-time fee to connect to the municipal sewer and for ongoing monthly sewage services that it did not, and for religious reasons could not, receive violated their religious beliefs to keep separate and apart from the modern world. The Old Order Amish also feared that entering into this agreement might tempt future generations of Old Order Amish families to connect to the municipal sewer system and thus threaten their religious way of life.

44. In 2010, the Yoders terminated their 2007 agreement with the SUGASA because of their sincerely held religious beliefs, stating that they were forced "into an unconscionable contract" by the Township and SUGASA.

45. In response to the Sugar Grove Old Order Amish households' refusal to connect to the municipal sewer system or to enter into an agreement that allowed Old Order Amish property owners to keep using their privies but required them to pay one-time and monthly fees towards the municipal sewer system, the Township increased the penalties for noncompliance with the Sewage Connection Ordinance. On December 7, 2010, the Township amended the Sewage Connection Ordinance to nearly double the potential fine – from a $300–$600 fine to a $500–$1,000 fine – for a first offense. Ordinance No. 10-12-07. For any subsequent offense, the Township imposed a flat penalty of $1,000 and imprisonment for 30 to 90 days. *Id.* Under the amended Sewage Connection Ordinance, noncompliance was considered a criminal rather than civil offense. *Id.*

46. The SUGASA filed a municipal claim and criminal complaint against the Yoders because of their noncompliance with the Sewage Connection Ordinance. Barbara and Joseph Yoder were found guilty of criminally violating the Sewage Connection Ordinance and were sentenced to $300 fines each on January 5, 2012.

47. The SUGASA also enforced penalties for noncompliance with the Sewage Connection Ordinance against other Sugar Grove Old Order Amish households, including by imposing liens against properties when the property owners refused to pay related fees.

**Negotiations Between the Township, SUGASA, and Sugar Grove Old Order Amish Stall in 2015**

48. On August 25, 2015, the SUGASA informed Sugar Grove Old Order Amish residents that it was "agreeable to allowing the Amish to continue to use their privies," but only if they paid a "$1,350 tap-in fee and the monthly sewer rate of $50 per month," which would "date back to the time that they would have been obligated to make the connection." The SUGASA's proposal required Sugar Grove Old Order Amish property owners to pay "all late fees and any costs incurred in filing and satisfying any liens that have been filed against their properties." According to the Township and the SUGASA, these conditions would "eliminate the need to have an electrical hookup on the property to run a grinder pump in violation of their deeply held religious beliefs."

49. The SUGASA's offer from August 25, 2015, was rejected by the Sugar Grove Old Order Amish.

### The Township Enacts and Amends the Privy Ordinance to Prohibit the Use of Privies for Any Permanent Residence

50. On October 18, 1993, the Township passed its original Privy Ordinance, No. 93-10-01, which it subsequently amended three times: (1) in November 2012 by Ordinance No. 12-11-06, (2) in December 2016 by Ordinance No. 16-12-06, and (3) in July 2017 by Ordinance No. 17-07-05.1.

51. The 1993 Privy Ordinance permitted privies for "permanent use," subject to obtaining a permit.

52. Penalties for violating the original 1993 Privy Ordinance included a fine between $100 and $600 and, in default of said fine, imprisonment up to 30 days.

10

53. The amended 2012 Privy Ordinance still permitted privies for "permanent use," but required an annual inspection, an annual fee, and a one-time fee equal to the amount of the Sewage Connection Ordinance tap-in fee at the time of the application for the privy permit.

54. The 2012 Privy Ordinance also increased the penalties for a first offense to a fine between $500 and $1,000, and to a fine of $1,000 and imprisonment for 30 to 90 days for any subsequent offense.

55. The 2016 Privy Ordinance removed the one-time tap-in fee requirement but was otherwise identical to the 2012 Privy Ordinance.

56. The amended 2017 Privy Ordinance does not allow privies for "permanent use" and instead prohibits property owners from using a privy on all properties intended for "permanent residence," even if the property's structures are not within 150 feet of the municipal sewer system.  Ordinance 17-07-05.1.

57. The 2017 Privy Ordinance allows privies on "construction sites or at sites of public gatherings and entertainments" or "on property which there is erected a structure intended only for periodic habitation."  Ordinance 17-07-05.1.

58. The 2017 Privy Ordinance imposes penalties for noncompliance of a fine between $500 and $1,000 for a first offense, and a fine of $1,000 plus a mandatory imprisonment term of 30 to 90 days for any subsequent offense.

59. Very few, and possibly none, of the Township's non-Amish residents utilize privies. Accordingly, the Township's Privy Ordinance only impacts Sugar Grove Old Order Amish residents.

60. Because all Sugar Grove Old Order Amish residents use privies pursuant to their sincerely held religious beliefs, all Sugar Grove Old Order Amish residents are potentially in

violation of the Township's Privy Ordinance, regardless of how close they are to the municipal sewer system. This means that the Privy Ordinance threatens the sincerely held religious beliefs and practices of all Sugar Grove Old Order Amish residents.

61. The Township has brought enforcement actions against Sugar Grove Old Order Amish residents for violating the Privy Ordinance.

### Enacting and Enforcing the Sewage Connection and Privy Ordinances Imposes a Substantial Burden on the Sugar Grove Old Order Amish's Religious Exercise

62. The Defendants' enactment and enforcement of the Sewage Connection and Privy Ordinances has imposed considerable costs on Sugar Grove Old Order Amish residents and created uncertainty about their ability to maintain their homes and practice their faith in the Township.

63. Currently, approximately 14 Sugar Grove Old Order Amish properties have structures within 150 feet of the municipal sewer system. Since the 2004 enactment of the Sewage Connection Ordinance, none of these Old Order Amish property owners have connected to the Township's municipal sewer system because doing so would violate their sincerely held religious beliefs.

64. The Defendants have imposed municipal liens and fines and obtained judgements against Sugar Grove Old Order Amish property owners totaling more than $200,000 because the property owners did not comply with the Township's Sewage Connection Ordinance.

65. The Defendants conducted a Sheriff's sale of the Yoders' home on September 23, 2021, because the Yoders did not comply with the Township's Sewage Connection Ordinance. The sale was only set aside because the Yoders were not provided proper notice.

66. As a result of a Sugar Grove Old Order Amish schoolhouse not complying with the Township's Sewage Connection Ordinance, the Defendants forced a Sheriff's sale of the schoolhouse for unpaid sewer connection fees. On February 4, 2021, SUGASA officials padlocked the schoolhouse, and the schoolhouse is now owned by the SUGASA.

67. As a result of not complying with the Sewage Connection Ordinance, Sugar Grove Old Order Amish residents Barbara and Joseph Yoder were each charged and convicted of criminal offenses and sentenced to pay criminal fines.

68. Because of their sincerely held religious beliefs, the Sugar Grove Old Order Amish use privies. Accordingly, all Old Order Amish residents, approximately 25% of the Township's total population, cannot comply with the Privy Ordinance and are currently subject to potential criminal charges and imprisonment.

69. The Defendants' enforcement of the Sewage Connection and Privy Ordinances has forced its Old Order Amish residents to effectively choose between their homes and their faith, in violation of RLUIPA.

70. The Old Order Amish residents of Sugar Grove Township have been and continue to be substantially burdened in the exercise of their religion because of Defendants' enactment and enforcement of the Sewage Connection and Privy Ordinances.

**Additional Allegations**

71. The Sugar Grove Old Order Amish have a reasonable expectation to use their land to exercise their religious beliefs without being forced to connect to the Defendants' municipal sewer system, which violates their sincerely held religious beliefs.

72. The Sugar Grove Old Order Amish's use of privies on their private properties does not implicate any compelling governmental interest of the Township or SUGASA. The Sugar

13

Grove Old Order Amish's use of privies does not pose a threat to the general health and safety of the Township.

73. The Township has not demonstrated that the Sugar Grove Old Order Amish's use of privies poses a health or safety risk to the Township.

74. Farming in the Township, including livestock waste byproduct and liquid manure use, poses a much larger risk of contaminating groundwater or compromising the Township's health and safety than does privy use, yet the Township does not regulate these farming activities.

75. The Defendants have not sought to implement the least restrictive means to address any purported concerns about the Sugar Grove Old Order Amish's use of privies or inability to connect to the sewage system.

76. At all times relevant, the Defendants did not have in place procedures or practices to ensure their officials were able to satisfy their obligations under RLUIPA, including but not limited to, providing RLUIPA training to Township or SUGASA officials and staff involved in religious land use determinations, and having established procedures to address complaints concerning denials of rights under RLUIPA.

77. The Sugar Grove Old Order Amish's ownership of their properties is a "property interest" within the meaning of 42 U.S.C. § 2000cc-5(5).

78. The Sewage Connection and Privy Ordinances include several provisions that contemplate an "individualized assessment" within the meaning of 42 U.S.C. § 2000cc(a)(2)(C).

79. The Sewage Connection and Privy Ordinances are "land use regulation[s]" within the meaning of 42 U.S.C. § 2000cc-5(5).

80. The Sewage Connection and Privy Ordinances and the Defendants' enforcement of them affects "commerce . . . among the several States" within the meaning of 42 U.S.C. § 2000cc(a)(2)(B).

81. The Sewage Connection and Privy Ordinances and the Defendants' enforcement of them are part of a "program or activity that receives Federal financial assistance" within the meaning of 42 U.S.C. § 2000cc(a)(2)(A).

## VIOLATION OF RLUIPA: SUBSTANTIAL BURDEN

82. The allegations set forth in the preceding paragraphs are incorporated by reference.

83. The Defendants' actions described in this Complaint have imposed, and continue to impose, a substantial burden on the Sugar Grove Old Order Amish's religious exercise in violation of RLUIPA, 42 U.S.C. § 2000cc(a)(1)-(2).

84. The Defendants' imposition of the burden on the Sugar Grove Old Order Amish does not further a compelling governmental interest using the least restrictive means. 42 U.S.C. § 2000cc(a).

## PRAYER FOR RELIEF

**WHEREFORE**, the United States prays that this Court enter an order that:

A. Declares that the Defendants' policies and practices, as alleged herein, violate RLUIPA;

B. Enjoins the Defendants, their officers, employees, agents, successors, and all other persons in concert or participation with them, from imposing a substantial burden on the religious exercise of the Sugar Grove Old Order Amish that is not narrowly tailored to further a compelling governmental interest; and

C. Requires the Defendants, their officers, employees, agents, successors, and all other persons in concert or participation with them, to:

15

      i. Take such actions as may be necessary to restore, as nearly as practicable, the Sugar Grove Old Order Amish to the position they would have been in but for Defendants' unlawful conduct, including, but not limited to, permitting the Old Order Amish to utilize privies on their properties; ensuring that Old Order Amish property owners do not have to connect to or financially contribute to the municipal sewer system; and relieving, discharging, and annulling all liens, fines, judgments and other monetary penalties against Old Order Amish residents and property owners for noncompliance with the Sewage Connection or Privy Ordinances; and

      ii. Take such actions as may be necessary to prevent the recurrence of such unlawful conduct in the future; and

D. Awards such additional relief as the interests of justice may require.

Dated: January 30, 2025

Respectfully Submitted:

|  |  |
|---|---|
|  | JAMES R. McHENRY III<br>Acting Attorney General |
| TROY RIVETTI<br>Acting United States Attorney<br>Western District of Pennsylvania | KATHLEEN WOLFE<br>Deputy Assistant Attorney General<br>Civil Rights Division<br>United States Department of Justice |
|  | CARRIE PAGNUCCO<br>Chief |
| */s/ Lee J. Karl*<br>LEE J. KARL<br>Chief<br>Civil Division<br>Western District of Pennsylvania<br>United States Attorney's Office<br>Western District of Pennsylvania<br>700 Grant Street, Suite 4000<br>Pittsburgh, PA 15219<br>Phone: (412) 894-7488<br>E-mail: LKarl@usa.doj.gov | */s/ Terrence K. Mangan, Jr.*<br>MEGAN K. WHYTE DE VASQUEZ<br>Deputy Chief<br>TERRENCE K. MANGAN, JR.<br>NOAH SACKS<br>Trial Attorneys<br>Housing and Civil Enforcement Section<br>Civil Rights Division<br>U.S. Department of Justice<br>150 M Street, NE<br>Washington, DC 20530<br>Phone: (202) 531-5995<br>Fax: (202) 514-1116<br>Email: terrence.mangan2@usdoj.gov |
|  | Attorneys for Plaintiff<br>United States of America |